## Case No. 18,277.

## CHARGE TO GRAND JURY — TREASON AND PIRACY.

### [2 Spr. 285.] [2]

Circuit Court, D. Massachusetts. Oct. 16, 1861.

TREASON AND TREASONABLE CONSPIRACIES—PIRACY—CONSTITUTIONAL AND INTERNATIONAL LAW—REGULATION OF COMMERCE.

[1. If war be actually levied, all those who perform any part, however minute, or however remote from the scene of action, and who are actually leagued in the general conspiracy, are to be regarded as traitors. Such part may be performed, not only by giving permission or other direct aid to the rebels, but also by acts which tend and are designed to defeat, obstruct, or weaken the arms of the United States.]

[2. Offences committed without the limits of the United States, upon the ocean, must be tried in the judicial district into which the offender is first brought, or into which he shall have been first apprehended.]

[3. Pirates are sea robbers or highwaymen of the sea, and all civilized nations have a common interest, and are under a moral obligation, to arrest and suppress them; and the constitution, in express terms, confers upon the United States the power to perform this duty, as one of the family of nations.]

[4. If a number of persons associate together, and undertake to establish a new government, and assume the character of a nation, and, as such, to issue military commissions, any other nation may, according to its own view of policy or duty, either utterly refuse to recognize the existence of such government, and treat all, who, acting under it, commit aggressions upon the ocean, as mere pirates, or it may fully recognize such new government, or may adopt the intermediate course between these two extremes, and, to some extent, and for some purposes, recognize the existence of a new government, while in other respects, and for other purposes, it rejects its pretensions to be deemed a nation.]

[5. The constitutional power to regulate commerce, and to pass all laws necessary to carry that power into effect, vests in congress the right, not merely to preserve and protect commerce, but to foster, strengthen, and extend it; and this authority is sufficient to sustain the validity of the legislation whereby congress has declared certain acts committed upon the high seas to be piracy, and punishable as such, even if those acts do not strictly constitute the crime of piracy as known to international law. Act 1790, c. 9, §§ 8, 9 (1 Stat. 113); Act 1820, c. 113, § 3 (3 Stat. 600); Act 1847, c. 51 (9 Stat. 175).]

[6. It is an offence punishable by fine and imprisonment, under the act of 1799 (1 Stat. 618, c. 1), for a citizen of the United States, at a time when a part of the inhabitants of the United States are in rebellion against the government, to write letters to a member of the British parliament, urging that body to acknowledge the independence of the insurgents.]

[7. Prior to the act of July 31, 1861 (12 Stat. 284), there was no law for punishing treasonable combinations or conspiracies which were not consummated by an overt act. The statute of that date, however, makes criminal not only combinations to overthrow the government, but conspiracies or mutual agreements, whether by few or many, whether public or private, forcibly to resist, or even to delay the execution of, any law.]

SPRAGUE, District Judge (charging jury). The two great offences which now force themselves upon the attention of courts and juries are treason and piracy. Upon both of these I have heretofore charged grand juries at some length. As those instructions can be laid before you, I do not think it necessary to repeat them at length, and I shall now make but few remarks upon these subjects.

The constitution declares that "treason against the United States, shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort." [Article 3, § 3.] This crime, like other offences, when committed within the limits of the United States, can be tried only in the state and district within which it is committed. Flagrant war being now carried on in other parts of the country, it becomes an important inquiry how far persons here, within your jurisdiction, may incur the guilt, and be subject to the penalties, of treason by co-operating with distant rebels. The law in that respect is this: if war is actually levied, all those who perform any part, however minute, or however remote from the scene of action, and who are actually leagued in the general conspiracy are to be considered as traitors. Such part may be performed, not only by giving information or other direct aid to the rebels, but also by acts which tend and are designed to defeat, obstruct, or weaken our own arms.

If any such offence should be presented for your investigation, I doubt not that you will without hesitation enforce this law, as just and reasonable; for a seeming friend in New York or Massachusetts may, by various means, do more injury to our country, and more effectually aid its enemies, than he could by actually joining the rebel army; and while we are sending forth thousands of our friends and neighbors to the dangers of the field, to fight our battles and preserve our government, we cannot permit their dangers to be increased, and their lives to be sacrificed, by the practices of traitors at home, who are enjoying the protection of our laws. Offences committed without the limits of the United States upon the ocean must be tried in the judicial district into which the offender is first brought, or in which he shall be first apprehended.

There are two distinct provisions of the constitution, by which congress is empowered to punish certain kinds of piracy. By the first article of the constitution, congress is authorized "to define and punish piracies and felonies committed on the high seas, and offences against the law of nations." Pirates are generally described as sea-robbers. They are deemed "hostes humani generis," enemies of mankind, warring against the human race. The ocean is the common highway of nations, over which every government has criminal jurisdiction. Pirates are highwaymen of the sea, and all civilized nations have a common interest, and are under a moral obligation, to arrest and suppress them; and the constitution, by the provision I have referred to, enables the United States to perform this duty, as one of the family of nations. Pirates are called and recognized as enemies. They carry on war, but it is not natural war; and they

[2] [Reprinted by permission.]

are not entitled to the benefit of the usages of modern civilized international war. There being no government with which a treaty can be made, or which can be recognized as responsible for the acts of individuals, the individuals themselves are held amenable to criminal justice, and liable to be put to death for the suppression of their hostilities. If a number of persons, large or small, associate together, and undertake to establish a new government, and assume the character of a nation, and as such to issue military commissions, any other nation may, according to its own view of policy or duty, either utterly refuse to recognize the existence of such assumed government, and treat all who, acting under it, commit aggressions upon the ocean, as mere pirates; or each nation may fully recognize such new government; or it may adopt any intermediate course between these two extremities,—to some extent, and for some purposes, recognize the existence of the new government, while in other respects, and for other purposes, it rejects its pretensions to be deemed a nation. Some of the nations of the earth, and particularly Great Britain, have taken this intermediate course in relation to the self-styled "Southern Confederacy." As there has been much sensibility manifested upon this subject, it is desirable that it should be well understood. Great Britain has merely declared that she will not ignore the existence of a Southern Confederacy, and treat those holding naval commissions under it as pirates; but that she recognizes the existence of civil war between the United States and the Southern Confederacy, and that she will take no part in such war. She in no degree interferes with the manner in which we shall treat either our own citizens or foreigners who may be engaged in this conflict, even although such foreigners be British subjects. She leaves us to deal with them as traitors or pirates, according to our own sense of justice and policy. Against this her position, we have nothing to urge under the law of nations or treaty stipulation.

Believing ourselves to be fighting the battle of human liberty and free institutions, and having heretofore cherished strong sympathy for others, the attitude assumed by Great Britain was not regarded as one merely of chilling indifference, but rather as an indication of unfriendly, if not hostile, feelings, exciting emotions of surprise and resentment. All, however, must admit that we cannot of right claim the assistance of any foreign government in the execution of our own laws or the suppression of rebellion. But we may justly claim that it shall not give aid to our enemies, or interfere with the manner in which we shall suppress a flagrant armed rebellion. It has been sometimes contended that some of the acts which are denominated piracy by congress are not such by the law of nations; and hence it has been inferred that such legislation is unauthorized. But it is to be observed that the constitution confers upon congress the power, not only to punish piracies under the law of nations, but also to define that offence. This approaches so near to a right to determine what shall constitute the offence, that it is not easy to subject it to precise limitations. But I do not dwell upon this source of authority, because our attention at the present time is called only to aggressions upon our own commerce; and that congress has ample power to repress these by penal legislation, there can be no doubt. The constitution, in express terms, gives authority to regulate commerce, and to pass all laws necessary to carry that power into effect; and this gives the right, not merely to preserve and protect commerce, but ever to foster, strengthen, and extend it. The criminal jurisprudence of the United States has extended to our commerce ever since the organization of our government, and this has been expressly sanctioned by the supreme court in U. S. v.

Coombs, 12 Pet. [37 U. S.] 72, and tacitly affirmed in a great number of criminal cases. The authority thus conferred upon congress has been exercised by a great variety of legislative enactments. By these acts, various offences are denominated and punished as piracy. By St. 1790, c. 9, § 8 (1 Stat. 113), "if any person or persons shall commit, upon the high seas, or in any river, haven, basin or bay, out of the jurisdiction of any particular state, murder or robbery, or any other offence which, if committed within the body of a county, would by the laws of the United States be punishable with death; or if any captain or mariner of any ship or other vessel, shall * * * yield up such ship or vessel voluntarily to any pirate," he shall be deemed a pirate, and, on conviction, shall suffer death. By section 9: "If any citizen shall commit any piracy or robbery aforesaid, or any act of hostility against the United States, or any citizen thereof, upon the high sea, under color of any commission from any foreign prince, or state, or on pretence of authority from any person, such offender shall, notwithstanding the pretence of any such authority, be deemed, adjudged and taken to be a pirate, felon, and robber, and, on being thereof convicted, shall suffer death." Accessaries before the fact are also punishable with death. By St. 1820, c. 113, § 3 (3 Stat. 600), "If any person shall, upon the high seas, or in any open roadstead, or in any haven, basin, or bay, or in any river where the sea ebbs and flows, commit the crime of robbery, in or upon any ship or vessel, or upon any of the ship's company of any ship or vessel, or lading thereof; * * * and if any person engaged in any piratical cruise or enterprise, or being of the crew or ship's company of any piratical ship or vessel, shall land from such ship or vessel, and, on shore, shall commit robbery, such person shall be adjudged a pirate: and on conviction thereof * * * shall suffer death." By St. 1847, c. 51 (9 Stat. 175), "Any subject or citizen of any foreign state, who shall be found and taken on the sea, making war upon the United States, or cruising against the vessels and property thereof, or of the citizens of the same, contrary to the provisions of any treaty existing between the United States and the state of which such person is a citizen or subject, when by such treaty such acts of such pesons are declared to be piracy, may be arraigned, tried, convicted, and punished * * * in the same manner as other persons charged with piracy." By St. 1846, c. 98, § 5 (9 Stat. 73), the punishment for piratically running away with any vessel, or delivering her to any pirate, is fine and imprisonment.

Whether any, or all, of the acts which by these statutes are denominated piracy, or piratical, be deemed such by the law of nations, is clearly immaterial, so far as the protection of our own commerce is concerned; and congress, having unquestionably the power to make such acts criminal when committed against our own commerce, and to punish them with any degree of severity, may adopt any nomenclature they see fit. The offence described is to be prosecuted, and punished in the manner directed, whatever name may be affixed to it, or if no name be given it. Thus in the statute of 1790, which declares that, if any person shall, upon the sea, commit murder or robbery, he shall be deemed a pirate or felon, and suffer death, an offence would have been completely described, and the punishment effectually denounced, if the words "shall be deemed a pirate and felon" had been wholly omitted. We have no occasion, therefore, to inquire, at least at the present time, whether the offences to which congress has seen fit to give the name of piracy or piratical, be deemed such by other nations or not.

There are other offences to which our attention is called by the present condition of our country. A few months since, a member of

the British parliament declared, in the most public manner, that he had received many letters from the Northern states of America, urging parliament to acknowledge the independence of the Southern Confederacy. Such an announcement ought to arrest the attention of grand juries; for, if any such communication had, been made by a citizen of the United States, it is a high misdemeanor. St. 1799, c. 1 (1 Stat. 613), was especially designed to prevent such unwarrantable interference with the diplomacy and purposes of our government. It declares: "That if any person, being a citizen of the United States, whether he be actually resident, or abiding within the United States, or in any foreign country, shall, without the permission or authority of the government of the United States, directly or indirectly, commence, or carry on, any verbal or written correspondence or intercourse with any foreign government, or any officer or agent thereof, with an intent to influence the measures or conduct of any foreign government, or of any officer or agent thereof, in relation to any disputes or controversies with the United States, or defeat the measures of the government of the United States," he shall be liable to punishment by fine not exceeding five thousand dollars, and imprisonment not less than six months nor exceeding three years. And the same penalties are incurred by any person who, being a "citizen of, or resident within the United States, and not duly authorized, shall counsel, advise, aid or assist in any such correspondence, with intent as aforesaid."

The last session of congress made two important additions to our Criminal Code. The statute of the 31st July last (Acts 1861, c. 33; 12 Stat. 284), declares: "That if two or more persons within any state or territory of the United States shall conspire together to overthrow, or to put down, or to destroy by force, the government of the United States, or to levy war against the United States, or to oppose by force the authority of the government of the United States; or by force to prevent, hinder, or delay the execution of any law of the United States; or by force, to seize, take, or possess any property of the United States against the will or contrary to the authority of the United States; or by force, or intimidation, or threat to prevent any person from accepting or holding any office, or trust, or place of confidence, under the United States; each and every person so offending shall be guilty of a high crime, and upon conviction thereof * * * shall be punished by a fine not less than five hundred dollars and not more than five thousand dollars, or by imprisonment, with, or without hard labor, as the court shall determine, for a period not less than six months nor greater than six years, or by both such fine and imprisonment." Levying war against the United States, and resisting or obstructing the execution of the laws of the United States, have, from the origin of the government, been criminal offences; but heretofore the criminal law has waited until treason or resistance has been consummated by an overt act. Conventions, associations, combinations, or conspiracies, however atrocious even for the purpose of levying war and subverting the government, were not subject to criminal prosecutions; but now we have a statute of prevention which reaches one of the initiatory steps. Not only combinations to overthrow the government, but conspiracies of mutual agreements, whether by few or many, public or private, forcibly to resist or even to delay the execution of any law, are high crimes, subject to severe punishment.

The statute of the 6th August last (Acts 1861, c. 64; 12 Stat. 326) prescribes a new oath of allegiance, and fidelity to be taken by every officer, clerk, or employé in the several departments, or in any way connected therewith. It is in the following form: "I do solemnly swear (or affirm, as the case may be) that I will support, protect, and defend the constitution and government of the United States against all enemies, whether domestic or foreign, and that I will bear true faith, allegiance, and loyalty to the same, any ordinance, resolution, or law of any state convention or legislature to the contrary notwithstanding; and further, that I do this with a full determination, pledge, and purpose, without any mental reservation, or evasion whatsoever; and further, that I will well and faithfully perform all the duties which may be required of me by law. So help me God." The violation of this oath is denounced and punished as wilful and corrupt perjury. What shall be deemed a violation, is not defined, but the very general and comprehensive language is left to judicial interpretation. This oath is wisely framed for the purpose of upholding the paramount authority of the national government, and recognizes allegiance to the United States as the highest political duty. It emphatically repels the deadly heresy of a paramount state allegiance.

Official oaths have heretofore generally been left without penal sanctions, their observance being secured only by the conscience of the officer; but we are admonished by recent atrocious examples, that the moral sense is no adequate security against the most appalling perfidy in officers of every grade, and it is wise therefore to affix to such crimes the palpable temporal penalties of perjury.

These two acts passed by the national legislature, at their recent session, to uphold the constitution and the government, are highly important. Looking at the powers and duties of congress by the light of the conflagration which has threatened to desolate our country, we see that such enactments ought to have existed from the beginning. If they had, and had been faithfully executed for the last twenty years, the catastrophe in which we are now involved would probably have been prevented.